JAMES KELLEY v. W. H. RYUS.

1. INJURY TO EMPLOYÉ—*Duty of Employer.* It is the duty of an employer in all cases to furnish his employés with a reasonably safe place at which to work, and with reasonably safe instruments or tools with which to work; and if he delegates these duties to another, such other becomes a vice-principal, for whose acts the principal is responsible.

2. DIRECTING VERDICT—*Error, When.* Where evidence is introduced on the trial which, if uncontradicted, would fairly prove all that is necessary for the plaintiff to prove in order to make out his case, it is error for the trial court to instruct the jury to find for the defendant, although such evidence might be contradicted by other evidence. The court has nothing to do with any conflict in the evidence, but must submit the question as to which is true and which not to the jury.

*Error from Wyandotte District Court.*

ACTION to recover damages for personal injuries. Judgment for defendant, *Ryus,* on October 4, 1888. The plaintiff, *Kelley,* brings the case to this court. The material facts are stated in the opinion.

*D. B. Hadley,* and *J. A. Hale,* for plaintiff in error.

*Scroggs & Gibson,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought in the district court of Wyandotte county, on May 2, 1887, by James Kelley against W. H. Ryus, to recover $5,000, for personal injuries alleged to have been sustained through the negligence of the superintendent and foreman of the defendant in operating the defendant's planing mill. The case was tried before the court and a jury, and at the close of the trial the court instructed the jury to render the following verdict, to wit: "We, the jury, find for the defendant;" and the jury rendered such verdict,

and judgment was rendered accordingly; and the plaintiff, as plaintiff in error, brings the case to this court for review.

Among the admitted facts are the following: The defendant owned and operated a planing mill in Kansas City, Kas. A. G. Millspaugh was his general superintendent, and J. F. Murray was his foreman for the work in the lower story of the planing mill. This lower story contained the planing-machines, and also contained boring- and mortising-machines. The plaintiff was at work at one of the planing-machines. Murray was at work at one of the boring-machines, and the work of the one interfered with that of the other. Murray changed the work at the planing-machine, with the intention that there should be no further interference, but the change did not seem to be successful. While the plaintiff was guiding a board through the planing-machine it struck the piece of timber which Murray had placed in the boring-machine, and the board was so disarranged and displaced that one of the plaintiff's hands came in contact with the knives of the planing-machine, and one of his fingers was cut off; and this, with the consequent loss, constitutes the injury for which the plaintiff now claims damages.

There were of course three main questions to be tried in the court below: (1) Was Murray a vice-principal for whom the defendant was responsible, or was he only a coëmployé with the plaintiff? (2) Did the injury occur through the negligence of Murray? (3) Was the plaintiff guilty of contributory negligence? The first question is probably the only one that can fairly be said to be presented to this court, and the only one which we need to consider, though possibly it may be claimed that the second one is also presented to this court; and these questions are embodied in the more general question: Was there any evidence introduced on the trial in the court below fairly tending to prove the affirmative of both the foregoing questions? If this general question should be answered in the affirmative, then the instruction of the court below to the jury to find for the defendant was erroneous; but if it should be answered in the negative, then

the instruction was correct. Some of the evidence with respect to these matters is as follows:

Witness Edward S. Preston:

"Ques. Who was foreman in that room? [The lower story of the planing mill.] Ans. Murray. We all worked under Murray's orders. Kelley told Murray that he couldn't run that piece on account of him running the pulley stile. Murray changed Kelley's rest as far back as he [Murray] could, and cater-cornered to clear the pulley stile, but he didn't quite do it. I was standing there waiting to ask Murray a question. Millspaugh was so busy talking to him that I did not bother him, and when he jerked back and hit Kelley's board, then Kelley run."

Witness Henry S. Preston:

"Ques. State what the duties of Murray were in the mill. Ans. He was foreman over the men. We all worked under his orders in the mill."

Witness James Kelley, the plaintiff:

"Ques. Who employed you? Ans. Mr. Murray employed me the last time I worked at the mill there.

"Q. Who was Mr. Murray? What position did he occupy? A. Well, he was foreman down stairs, down around the machinery."

.   .   .   .   .   .   .   .   .   .   .   .   .

"Q. You stated that was Mr. Ryus's planing mill, and Mr. Murray employed you in the work? A. Yes, sir."

.   .   .   .   .   .   .   .   .   .   .   .   .

"Q. Who directed you to work upon that machine? A. Mr. Murray.

"Q. How long had Mr. Murray been there as foreman? A. Well, he was there when I went there at this time; he had been there some time before, I do not know just how long; been there some time, though."

.   .   .   .   .   .   .   .   .   .   .   .   .

"Q. Just tell the jury what occurred between you and this foreman, Murray, when he first came up there and began to work on his machine. A. Well, he came up and went to work on the machine; I think the first piece that I run over, I had hit the piece that he was running through his machine; and I spoke to him then and asked him if he was going to

bore them pulley stiles on there, and he said he was.  I told
him then maybe I had better wait until he got through.   He
says, 'No, this wont bother you any,' and he came over and
changed the gauge of my machine round in a kind of cater-
cornered shape across the table."

.      .      .      .      .      .      .      .      .      .      .

"Q. Now, what caused your fingers to drop down on the
knives?   A. Well, by running the piece that I was working
on against the piece Mr. Murray had left in his machine
sticking out, and the piece I run through ran against his and
tipped the piece over and throwed my hands onto the knives.
"Q. If it tipped it over, it tipped it over before you got
cut?   A. It just knocked—run against it and tipped it out
of my hands and throwed it right down onto the table, and
my hand fell off, and hit right onto the knives when it went
down."

.      .      .      .      .      .      .      .      .      .      .

"Q. What did Murray do about the mill?   A. He did all
the laying out of all the work; got it all laid out; made out
all the bills of all the stuff that was to be got out."

.      .      .      .      .      .      .      .      .      .      .

"Q. Murray did nothing about signing checks or anything
of that kind?   A. No, sir; he kept the time was all.   He
turned the time over every night to Mr. Millspaugh."

.      .      .      .      .      .      .      .      .      .      .

"Q. He stated what you were to work on?   A. Yes, sir;
he always gave me my work I did there."

Other testimony might be given of the same general char-
acter, but this is deemed to be sufficient.   Under all the testi-
mony in the case, for and against the plaintiff, we think the in-
struction of the court below was erroneous.   It is perhaps un-
necessary to cite authorities, and yet with respect to the duties
of employers towards employés, and with respect to who are
co-employés, see the case of *St. L. & S. F. Rly. Co. v. Weaver*,
35 Kas. 412, 425–430, and cases there cited; and as to the
province of the court and the jury with respect to each other,
see the following cases: *K. C. Ft. S. & G. Rld. Co. v. Foster*,
39 Kas. 329, 330, *et seq.*, and cases there cited; *Usher v. Hiatt*,
18 id. 196, 202–205; *Heithecker v. Fitzhugh*, 41 id. 50.   It
is the duty of an employer in all cases to furnish his employés

with a reasonably safe place at which to work, and with reasonably safe instruments or tools with which to work; and if he delegates these duties to another, such other becomes a vice-principal, for whose acts the principal is responsible; and where evidence is introduced on the trial which, if uncontradicted, would fairly prove all that is necessary for the plaintiff to prove in order to make out his case, it is error for the trial court to instruct the jury to find for the defendant, although such evidence might be contradicted by other evidence. The court has nothing to do with any conflict in the evidence, but must submit the question as to which is true and which is not to the jury.

The judgment of the court below will be reversed, and the cause remanded for a new trial.

All the Justices concurring.