THE MISSOURI, KANSAS & TEXAS-RAILWAY COMPANY v. ELIZABETH YOUNG, *as Administratrix of the Estate of James S. Young, deceased.*

NO. 420.

1. EVIDENCE—*Demurrer Properly Overruled.* It is not error for the court to overrule a demurrer to evidence when there is some competent testimony tending to prove each fact necessary to establish the plaintiff's cause of action.

2. INJURY TO EMPLOYEE — *Assumption of Risk — Contributory Negligence.* Where a person seeks employment in any line of business where there is danger he assumes the risk and hazard ordinarily incident to such employment; by accepting the employment he represents himself as competent to perform that kind of work, and that he will not be guilty of negligence in and about the performance of the same; he owes to his employer vigilance and care in the execution of the undertaking, and where he has been guilty of negligence contributing to his injury personally, he cannot recover for such injury.

3. ——— *Question for Jury.* The question of contributory negligence on the part of an employee is a matter of fact for the consideration of the jury, under all the evidence, on the trial of the case.

4. MASTER AND SERVANT—*Reasonably Safe Tools for Work.* It is the duty of the master to furnish his servant with a safe place to perform the work he undertakes to do, and to provide him with such tools and instruments with which to do the work as are reasonably safe. If the master performs all that is required of him under the law, and the servant is injured by accident, or through lack of proper care on his part, the master is not liable for such injury; but if the master fails to furnish the servant with a safe place to perform his work, or fails to furnish him with suitable and reasonably safe instruments with which to perform his work, and the servant is injured by reason of the master's

failure, then the master is liable, unless the servant, knowing the defective condition of the tools, uses them without complaint; then he waives his right to damages.

5. ——— *Knowledge of Defects in Tools—Question for Jury.* On the trial of an action to recover for personal inuries which were received while in the employ of a railroad company in its shops as a carpenter, and while placing a heavy engine tank-frame in position on the trucks by means of the use of what is known as a lifting-jack, the cogs in the jack slipping and the handle of the jack striking him on the back of the head and neck, and rendering him unconscious for a number of days, the question of the defective condition of the jack and the knowledge of the railroad company were matters of fact to be determined by the jury upon the evidence.

6. ——— *Condition of Tools—Duty of Company.* It is the duty of a railroad company to furnish its employees with reasonably safe tools and implements with which to perform their work, and also to exercise reasonable care and diligence to see that the tools and instruments furnished by it to the employees are kept in such repair and condition as would be safe for the purposes for which the employees are required to use them.

7. ——— *Notice of Defects—Accident or Misfortune.* Where the railroad company has furnished, in the first instance, such reasonably safe tools and implements to the employee, to be used in the performance of the work he undertakes to do, and the tools become worn or some latent defect exists of which the company has no knowledge, or by the exercise of ordinary care and diligence it could not have discovered, and the employee using the same has the same means of knowing the condition of the tools that the company has, and the tools are by each considered reasonably safe, and the employee is injured by the use of the tools, it is a mere accident or misfortune for which the company is not liable.

MEMORANDUM.—Error from Labette district court; J. D. McCUE, judge. Action by James S. Young against The Missouri, Kansas & Texas Railway Company to recover for personal injuries. Judgment for plaintiff. Defendant brought the case to this court. The defendant having died, the action was revived in the name of the administratrix, Elizabeth Young. Affirmed. The opinion herein was filed July 13, 1896.

The statement of the case, as made by JOHNSON, P. J., is as follows:

This action was commenced in the district court of Labette county by James S. Young against the Missouri, Kansas & Texas Railway Company to recover for personal injuries alleged to have been received while in the employment of the plaintiff in error as a carpenter in its shops at Parsons, Kan. The injury was alleged to have been caused by the handle of a lifting-jack striking him on the side of the head, while being used for lifting a heavy engine tank-frame. It was alleged that the lifting-jack was insecure, unsafe and defective in this, that the teeth or cogs in the ratchet were broken, worn off and rounded at the ends or points, and the points or ends of the pin or pawl, which was intended to engage with the teeth or cogs, were broken, worn off, and rounded; that the spring in said jack intended to force said pin or pawl into and hold it engaged with said teeth or cogs was weak and insufficient for the purpose for which it was intended; that, at and prior to the time when the plaintiff below sustained the injuries, all of the defects and insecure and unsafe conditions of said lifting-jack, by the use of ordinary care and diligence, might have been and were known to the defendant, through its foreman, J. M. Shook, and were unknown to the plaintiff; that it was the duty of the said J. M. Shook, as agent and foreman, to inspect the lifting-jack and know its condition, and see that it was in good condition for the proper performance of the work in the discharge of which it was intended it should be and was used, but that, nevertheless, said defendant carelessly and negligently allowed said lifting-jack to remain for use in its said shops at Parsons, and in

said defective, insecure and unsafe condition, and, though said Shook, as aforesaid, directed plaintiff and other employes to use it for the purpose for which it was designed ; that while plaintiff was engaged in the careful performance of his duty, in attempting by means of said lifting-jack to lower the tank frame, the pin or pawl of said lifting-jack, by reason of its defective condition, which was unknown to the plaintiff, slipped and disengaged itself from the teeth or cogs of the ratchet, and allowed the whole weight then being sustained by said lifting-jack to fall or rest on the lever, and, without fault on the part of the plaintiff, caused said lever very quickly and violently to be lifted and to strike plaintiff in the back portion of the right side of the head and neck with great force, then and there bruising and cutting the flesh, breaking and crushing the bone of his skull, and bruising his neck, causing great pain and suffering, and rendering him unconscious for 46 days ; that it severely shocked his nervous system, causing him to become and remain very nervous and his hands and limbs to become unsteady and tremulous, and partially paralyzing his tongue and other organs of speech ; that it caused a general and increasing impairment of his physical condition, and rendered him incapable of pursuing his former occupation or performing manual labor. The petition alleged, also, the expenditure of large sums of money for medical attendance, medicine, loss of time, and suffering great pain by reason of such injury.

In answer to the allegations of the petition of the plaintiff, the defendant below first set up a general denial, and in the second and third defenses alleged contributory negligence.   To the allegations of new matter contained in the answer of the defendant below

the plaintiff's reply was a general denial.  The case was tried before the court, with a jury, who rendered a verdict for plaintiff; and made special findings of fact in answer to questions submitted to them.   Motion was made for a new trial, overruled, and exceptions taken, and the case brought here for review.

*T. N. Sedgwick*, and *A. A. Osgood*, for plaintiff in error.

*F. H. Foster*, for defendant in error.

The opinion of the court was delivered by

JOHNSON, P. J.:  The plaintiff in error sets out and assigns 10 separate grounds of error in its petition, but in its brief waives all the errors assigned except two, and relies upon the following, to which it calls the attention of this court:

"1.  That the court erred in not sustaining the demurrer interposed by the plaintiff in error to the evidence of the defendant in error at the close thereof, upon the ground and for the reason that the evidence wholly fails to disclose any cause of action or ground of relief in favor of the plaintiff below, and that the court erred in refusing to instruct the jury at the close of all the testimony to find for the defendant below, for the same reason, and that the court erred in refusing to grant the defendant below a new trial.

"2.  The court erred in permitting improper testimony to be given to the jury, over the objection of the defendant below."

The first error relied upon involves two distinct propositions:  (1) That the court erred in overruling the demurrer of defendant below to the evidence;  (2) that the court erred in refusing to instruct the jury at the close of all of the evidence to return a verdict for the defendant below.   Plaintiff in error in its brief says:  "Hence, we conclude that the only question in

the first assignment of error is whether the trial court erroneously overruled the demurrer to the evidence of plaintiff below.'' Upon an examination of the record, we find that the cause of action of the plaintiff below was to recover for personal injuries which he received while in the employ of the Missouri, Kansas & Texas Railway Company in its shops at Parsons, Kan. The plaintiff below was employed as a carpenter in the shops, and while engaged in the performance of his work in the shops, and while placing a heavy engine tank-frame in position on the trucks by means of the use of what is known as a lifting-jack, the cogs in the jack slipped, and the handle of the jack struck him on the back of the head and neck and rendered him unconscious, and he remained in an unconscious condition for 46 days. The lifting-jack is a tool used by the workmen in the shops in raising and lowering heavy timbers and such objects as are required to be moved. It is operated by working the handle up and down, and it raised the tank-frame by means of a ratchet in which were cogs; as the handle was pressed down it would raise the ratchet upon which the tank-frame rested, and it was held in place by means of a pawl or spring catch, which slipped into the cogs in the ratchet; then the handle would raise and would catch the lever down in the cogs on the ratchet, and pressing down on the handle would raise the ratchet, causing the spring to slip down over the cogs; as soon as pressure upon the handle would cease, the pawl, or spring catch, would slip under the cogs and hold them until the handle was again raised; by this means the tank was raised and held in place.

The evidence was conflicting as to the condition of the lifting-jack, and as to whether the defective condition of the jack was the cause of the injury to the

plaintiff below. Young testified to the length of time he had been employed in the shops; that there were two lifting-jacks furnished the employees; that he had frequently used them, and described the jack that he was using at the time that he was injured. He testified to the manner in which he was using the jack, the position of the other persons who were assisting him, and the manner in which he received the injury, and that he did not know the jack was defective; that he had never examined it to ascertain its condition; that it was no part of his business to inspect the tools that were used in the shop where he worked; that there were foremen whose duty it was to inspect tools; that the ratchet, pawl, spring and cogs were all inside of the jack, and could not be examined except by taking the jack apart; that he never took it apart or saw the inside works of it.

W. L. Hammack testified that he was employed in the shops at the same time that Young was, and was working there at the time of the injury. He was a carpenter; had used the lifting-jack; had discovered that it was defective and that it was unsafe unless great care was exercised in using it; that it slipped twice with him before the time Young was hurt; that the jack would not perform as it should unless one was very careful in using it; that he would have to notice very particularly that the catch slipped into the proper place; that he took the jack apart and made an examination of it and found that the cogs in the brass catch were worn; that the worn condition of the cogs had such effect that the jack would not hold, and described the condition of the jack at length and why it would slip; that it was dangerous, and that the defective condition could not be discovered without taking the jack apart and examining it.

Taking the jack that was then before the jury and explaining to them, he said:

"This pin, in drawing up, as I just said, on these cogs a little, you press down that way; sometimes it would not do it at all; it would not do it all the time; it would slip off; it done that way a couple of times; of course when it happened I took it out and looked to see what was the matter with it, and what I discovered was the edge of these cogs had worn to some extent.

"Ques. State whether or not you could ascertain that without an inspection and examination. A. No, sir, I could not."

Peter Reinhart testified that he was an employee in the Missouri, Kansas & Texas shops at Parsons, Kan., at the same time plaintiff below worked there; that he was a carpenter and worked in the same shop with Young; that he had used the lifting-jack; had examined it before the injury to Young, and found that it was worn so much that it slipped cogs; that it frequently slipped with him; that he had to be very cautious in using it; that Jack Shook was foreman and manager of that department; that he had a conversation with Jack Shook on the same morning Young was hurt about the defective condition of the jack; that the conversation was about two hours before Young was hurt.

Other witnesses testified about the defective condition of the jack, and the jack was in evidence before the jury and was examined by witnesses in their presence, and the manner of operating it was shown. The jury saw and examined it in court, and had an opportunity to inspect it and discover the worn and defective parts described by the witnesses. The injury to Young was fully described by the witnesses, the length of time he was unconscious, his impaired

physical condition, the medical attendance, expense for medicine, and the time lost while he was entirely unable to do any kind of business.

We think the evidence tended to prove every material fact involved in the pleadings and was such that it should have been submitted to the jury, although there was great conflict in the evidence. This court cannot find that the court below erred in overruling the demurrer to the evidence unless there was no competent evidence given which tended to support the plaintiff's cause of action, and upon which the jury might, under the most favorable construction of the whole evidence, find for the plaintiff below. The court will not weigh conflicting testimony, but if there is any competent testimony tending to support every material allegation in the plaintiff's petition, the case should be submitted to the jury. This matter has been too often decided by the supreme court to admit of any further comment upon it.

It is contended by plaintiff in error that at the time of the injury to Young he was handling the jack, and for its operation at that time he was alone responsible; that is to say, if the jack had to be handled with due care — and that seems to have been the exact condition — then the plaintiff handling it alone without assistance was certainly guilty of a lack of necessary care or he would not have received the injury. It is a well-settled principle of law that where a person seeks employment in any line of business where there is danger he assumes the risk and hazard ordinarily incident to such employment. By accepting the employment he represents himself competent to perform that kind of work, and that he will not be guilty of negligence in or about the performance of the same. He owes to his employer vigilance and care in the ex-

ecution of the undertaking.   Where he has been guilty of negligence contributing to some injury to him personally he cannot recover for such injury.   But the question of contributory negligence on the part of the employee is a matter of fact for the consideration of the jury, under all the evidence, on the trial of the case.   In the first place it is the duty of the master to furnish his servant with a safe place to perform the work he undertakes to do, and to provide him with such tools or instruments with which to do the work as are reasonably safe.   If the master performs all that is required of him under the law, and the servant is injured by accident or through lack of proper care on his part, the master is not liable for such injury; but if the master fails to furnish the servant with a safe place to perform his work, or fails to furnish him with suitable and reasonably safe instruments with which to perform his work, and the servant is injured by reason of the master's failure, then the master is liable, unless the servant knowing the defective condition of the tools uses them without complaint; then he waives his right to damages.

Plaintiff in error claims that Young used the jack almost daily for five years; that if there was a cog broken on the ratchet, Young could see that fact as well as Shook; that if the pawl slipped, Young would observe that quicker than Shook could possibly ascertain it by an inspection; that the fact that Young had made no complaint to Shook of the imperfection of the jack, although using it almost daily for five years, and had never informed him that it was dangerous, had never protested against its use, but had continued to use it, is the strongest evidence that could be produced that he assumed the jack to be absolutely safe; or, if he did not consider it to be safe, that he assumed

the risk of its imperfections, of which he had full opportunity to know. The evidence shows that this jack had been in constant use in the shops at Parsons for six or seven years, and that the cogs in the ratchet had become considerably worn, and for that reason it was liable to slip if great care was not taken in using it, and when it was used in raising or lowering heavy timbers, and the cogs slipped in the ratchet, the handle would fly up quickly, and made it dangerous to the persons operating it.

It was not only the duty of the railway company to furnish the employees with reasonably safe tools and implements with which to perform their work, but also to exercise reasonable diligence and care to see that the tools and instruments furnished by it to the employees were kept in such repair and condition as would be safe for the purposes for which the employees were required to use them. It was not sufficient that the railway company, in the first instance, furnish safe tools and implements, but the law requires of it the exercise of reasonable care and diligence to keep such tools and instruments in a reasonably safe condition and repair ; and if the company fails to discharge its duty in this respect, and injury thereby results to the employee, without his fault, the railway company is liable for such injury. Where the railway company has furnished, in the first instance, such reasonably safe tools and implements to the employee, to be used in the performance of the work he undertakes to do, and the tools become worn, or some latent defect exists of which the company has no knowledge, or by the exercise of ordinary care and diligence it could not have discovered, and the employee using them has the same means of knowing the condition of the tools that the company has, and

the tools are by each considered reasonably safe, and the employee is injured by the use of them, it is a mere accident or misfortune, for which the company is not liable.

In the case of the *A. T. & S. F. Rld. Co. v. Wagner*, 33 Kan. 666, VALENTINE, J., delivering the opinion of the court, says:

"(1) An employee of a railroad company, by virtue of his employment, assumes all the ordinary and usual risks and hazards incident to his employment. (2) As between a railroad company and its employees, a railroad company is not an insurer of the perfection of any of its machinery, appliances or instrumentalities for the operation of its railroad. (3) As between a railroad company and its employees, a railroad company is required to exercise reasonable and ordinary care and diligence, and only such, in the furnishing to its employees reasonably safe machinery and instrumentalities for the operation of its railroad. (4) It will be presumed, in the absence of anything to the contrary, that the railroad company has performed its duty in such cases, and the burden of proving otherwise will rest upon the party asserting that the railroad company has not performed its duty. (5) And where an employee seeks to recover damages for injuries resulting from insufficiency of any of the machinery or instrumentalities furnished by the railroad company, it will not only devolve upon such employee to prove such insufficiency, but it will also devolve upon him to show either that the railroad company had notice of the defects, imperfections or insufficiencies complained of, or that by the exercise of reasonable and ordinary care and diligence it might have obtained such notice. (6) And proof of a single defective or imperfect operation of any of such machinery or instrumentalities, resulting in injury, will not of itself be sufficient evidence, nor any evidence, that the company had previous knowledge or notice of any supposed or alleged defect, imperfection or insufficiency in such machinery or instrumentalities. (7) As between a railroad company and its employees, the rail-

road company is not necessarily negligent in the use of defective machinery, not obviously defective, but it is negligent in such cases only where it has notice of the defects, or where it has failed to exercise reasonable and ordinary diligence in discovering them and in remedying them."

The questions in relation to the condition of the jack, whether it was defective in the manner claimed, or whether it was in good condition, were all before the jury on conflicting testimony, and it was for the jury to determine whether the jack was defective, and if it was, whether the defendant below had any knowledge of its defective condition, or, if not, whether it could have discovered its condition by the use of ordinary diligence. These are all matters of fact for the jury, and the jury having passed upon the facts on conflicting testimony, their findings must be conclusive of the facts.

The final contention of counsel for plaintiff in error is that the court erred in permitting improper testimony to go to the jury. The evidence complained of by counsel all refers to the condition of the lifting-jack, by witnesses who were mechanics, and who had used the jack for a number of years, and were familiar with its construction, its operation, the frequency with which it had been used, and its worn condition. The jack was produced in court before the jury, and the witnesses for both plaintiff and defendant explained fully the condition that it was in at the time of the injury. We have examined the evidence with great care and do not think there was any substantial error committed by the court in permitting the same to go to the jury.

No error appearing in the record, the judgment of the district court is affirmed.

All the Judges concurring.