JAMES BUOY v. THE CLYDE MILLING AND ELEVATOR COMPANY.

No. 13,458. (75 Pac. 466.)

SYLLABUS BY THE COURT.

1. PRACTICE, DISTRICT COURT—*Demurrer to Evidence.* A ruling on a demurrer to the evidence is a decision of law occurring at the trial, which is subject to reconsideration on a motion for a new trial.

2. ———— *New Trial Improperly Granted for Overruling Demurrer to Evidence.* Where a new trial is granted upon the sole ground that error was committed in overruling a demurrer to the evidence, after having denied the motion on other grounds, including one that the findings and verdict were not sustained by sufficient evidence, the case is in the same situation and the court governed by the same rules in passing upon the evidence as when the demurrer was originally considered and decided; and if there was substantial evidence tending to sustain the cause of action stated in plaintiff's petition, the granting of the motion for a new trial was erroneous.

3. ———— *Proper Consideration of Such Motion for New Trial.* When considering that ground of the motion the court could not weigh the evidence for the purpose of settling conflicts in it, and could not allow the motion unless it was able to say that, admitting every fact proved which was favorable to plaintiff, and admitting everything which was fairly inferable from the evidence most favorable to the plaintiff, he has failed to make out some one or more of the material facts of his case.

4. MASTER and SERVANT—*Duty of Master—Assumption of Servant.* The furnishing of a safe place to work and safe appliances with which to do the work is among the absolute duties of the master; and unless the servant's attention is drawn to defects or the dangerous condition of the place or the appliances furnished, or he should have known of them, he is not required to make an investigation, but may rest upon the assumption that the master has performed his duties in these respects.

5. ———— *Facts do not Warrant Assumption of Negligence or its Absence.* Under the facts of this case it cannot be said that the defendant was not negligent in the erection of the scaffold, the fall of which injured the plaintiff, nor can it be said that the defendant knew, or should have known, of the defects and dangers of the situation.

Error from Cloud district court;  HUGH ALEXANDER, judge.   Opinion filed February 6, 1904.   Reversed.

*Caldwell & Wilmoth*, for plaintiff in error.

*Pulsifer & Smith*, and *Frank P. Harkness*, for defendant in error.

The opinion of the court was delivered by

JOHNSTON, C. J.:  James Buoy, an employee of the Clyde Milling and Elevator Company, who was assisting in the construction of a warehouse, was injured by the fall of a negligently constructed scaffold. Engaged in the work at the same time were Richa, a carpenter receiving $2.50 per day, and Buoy, a man of all work who received only $1.15 per day.   Miller, the general manager of the company, employed Richa to complete the building, and told him that he would send Buoy around to help him.   According to plaintiff's testimony, Richa had worked some time and had practically completed the scaffold when Buoy arrived at the building.   Buoy inquired if the scaffold was safe, and the reply of Richa was that it could not be pulled down with a team.   Plaintiff went upon the scaffold with Richa and within a few minutes it fell to the ground and the plaintiff was seriously injured.

In this action for damages the plaintiff alleged that the injury was caused by the negligence of the defendant and its employees in the unsafe and defective way in which the scaffold was built; that plaintiff had nothing to do with the construction of the scaffold and had no knowledge of its defective and insecure condition.   The defendant pleaded that the injury was the result of plaintiff's negligence and not

that of the defendant, and further, that his injury had been greatly increased by the failure to take proper care in the treatment of his injury.   There was con-flicting testimony as to the experience of plaintiff, his knowledge of existing conditions, and whether he was subordinate to Richa, the carpenter.·  There was con-flict, too, as to whether plaintiff assisted in the erec-tion of the scaffold and should have known of its defective condition.  When plaintiff had introduced his testimony, a demurrer thereto was interposed by the defendant which the court, after consideration, overruled.  The defendant's testimony was then in-troduced, and also some by the plaintiff in rebuttal, when the court submitted the case on instructions, with special questions which the jury were required to answer.  The jury found in favor of the plaintiff, awarding him $1069 as damages, and returned an-swers to the special questions as follows :

"1.  Were not the brackets, the braces, the pickets and the plank or planks used as flooring on the scaf-fold in question all of good, safe, sound material and fit for the purpose for which they were used ?   A. Yes."

"3.  Was not the plaintiff present and assisting in completing and erection of the scaffold in question ? A.  No.

"4.  Did not the plaintiff have ample opportunity to examine and inspect the scaffold as erected, and every part thereof, to ascertain as to its condition and the manner in which it was erected and was standing, before going to work thereon ?   A.  Yes.

"5.  Was any officer or agent of the defendant cor-poration present at the time the scaffold was erected and before the accident?   A.  Yes.

"6.  If you answer the preceding question in the affirmative, state what officer of the corporation.   A. Richa, vice-principal.

"7.  Was not the witness Richa an experienced,

competent and skilful mechanic or carpenter? A. Yes.''

"9. Did the witness Richa have any supervision or control over the plaintiff in the work that they were doing on the day of the accident. A. Yes.

"10. If you answer the last question in the affirmative, state what supervision or control said Richa had of the plaintiff, and from what source or authority he procured the right to such supervision or control. A. Vice-principalship, from Miller.

"11. Did not the plaintiff receive his orders as to the work done or to be done on the day of the accident from Miller, the manager of the defendant, and from no other person? A. Yes.

"12. Did either the plaintiff or the witness Richa have any authority or control over the other? A. Yes.

"13. If you answer the last question in the affirmative, then state what such authority or control was and from what source it originated. A. As vice-principal, from Miller.

"14. Did the defendant or any of its officers or agents in any way direct, superintend or have charge of the erection of the scaffold in question? A. Yes.

"15. If you answer the previous question in the affirmative, then state which officer of the defendant, and what such officer did towards directing, controlling or superintending the erection of the scaffold in question. A. Vice-principal Richa erected the scaffold.

"16. Was not such scaffold, erected in the manner in which this scaffold was erected, an ordinarily safe place upon which to perform the work necessary to be done at that time? A. No.

"17. If you answer the preceding question in the negative, in what respect was such scaffold unsafe? A. Defective in bracing.

"18. Did not the defendant and its officers and agents use all proper and reasonable care in providing for the safety of the plaintiff in doing the work that he was to do on the day of the accident? A. No.

"19. If you answer the preceding question in the

negative, then state fully in what respect you find the defendant or its officers guilty of negligence. A. In defective bracing of scaffold.

"20. Under the instructions under which the plaintiff and the witness Richa were. working on the day of the accident, was it any more the duty of one than the other to erect any scaffold that might be needed for use in the work which they were to do? A. Yes.

"21. If you answer the preceding question in the affirmative, then state which one, and why. A. Richa, vice-principal.

"22. Was it not necessary, in order to do the work which plaintiff and the witness Richa had been ordered to do on the day of the accident, that a scaffold be erected? A. Yes.

"23. If you find for the plaintiff, state how much, if any, you allow for medical attendance and treatment; how much, if any, you allow for physical suffering; how much, if any, you allow for mental suffering; how much, if any, you allow for loss of time, and how much, if any, for permanent injuries. A. 1st, $5.90; 2d, $100; 3d, $50; 4th, $69; 5th, $844.10. Total amount allowed, $1069.

"24. Was not the plaintiff just prior to the accident standing on the plank beyond and outside of the west bracket? A. No."

The defendant objected to the answers made to several questions which were all overruled except as to No. 10, which, under the direction of the court, was reconsidered and a modified answer returned, striking out "Vice-principalship, from Miller," and inserting "By being a superior workman." The defendant asked that certain of the findings be set aside because they were not sustained by the evidence, not responsive to the questions, and were contrary to the law and the instructions of the court. This motion was overruled; whereupon they asked for judgment in favor of the defendant on the findings, but this motion was likewise overruled. A motion for a new

trial was then made on six different grounds, one of which was that the verdict and special findings were not sustained by sufficient evidence and were contrary to law ; also, errors of law occurring at the trial. The motion for a new trial was allowed, as is recited in the entry,

"on the ground following and for no other ground : That the court committed error in refusing to sustain the demurrer filed and presented by the defendant to the evidence introduced by plaintiff, the court holding that under the evidence presented the plaintiff was not entitled to recover and that the case should not have been submitted to the jury."

The order granting a new trial is assigned for error. Ordinarily, courts hesitate to disturb an order granting a new trial, where both parties are afforded another opportunity to have a fair and impartial trial of the case on its merits. So it has been said that a much stronger case for reversal must be made where a new trial, is allowed than where it is refused. A trial court has quite an extended discretion in the granting of new trials, and such an order will not be set aside unless it can be said that the court committed error with reference to some pure, simple, unmixed question of law. Where several grounds are alleged and the trial court does not state upon what particular ground the motion is allowed, the supreme court will sustain the order if it can be done upon any of the grounds assigned.

Most of the statutory grounds were alleged in the motion, but the court stated the particular ground upon which the motion was allowed, namely, that error was committed in the refusal to sustain the defendant's demurrer to plaintiff's evidence. To remove any possible question, a recital was added that it was sustained for no other ground. The court having re-

fused to set aside the findings because they were not sufficiently supported by the testimony, and also refused to enter a judgment thereon in favor of the defendant, and having overruled all other grounds of the motion for a new trial except the single one which has been mentioned, its order rests on a question of law alone. The court in effect held that the findings of the jury were sustained by sufficient evidence ; that these findings did not warrant a judgment in favor of the defendant ; that they did not conflict with each other nor with the verdict ; that there was no irregularity in the proceedings ; no misconduct of the jury or the plaintiff ; that the damages were not excessive or given under the influence of passion or prejudice ; that the verdict and findings were not without support in the testimony, and that no errors of law occurred at the trial except the refusal to sustain a demurrer to plaintiff's evidence. Manifestly, the court held that the whole testimony, including that of plaintiff and defendant, made a case against the defendant and supported the findings and verdict, but that when the plaintiff rested, and when the demurrer to the evidence was introduced, there was not sufficient testimony to warrant a submission of the case to the jury.

The ruling on the demurrer to the evidence is a decision of law occurring at the trial, and is not available as error unless raised by a motion for a new trial. It was so raised in this case, and when presented in that way the case was in the same situation, and the trial court was governed by the same rules, in measuring the evidence, as it was when the demurrer was originally considered and decided. If the demurrer should not have been sustained a new trial should not have been granted because of the decision overruling

the demurrer.   Was there substantial testimony tending to sustain the cause of action stated in plaintiff's petition?   In determining the question the court could not weigh evidence nor settle conflicts in it. The demurrer admitted the facts which the evidence most favorable to plaintiff tended to prove and all that might be fairly inferred from those facts.

A very different question would be presented if the ground for a new trial was that the verdict was not sustained by sufficient evidence.   There the court might weigh the conflicting evidence, and, if the verdict did not meet with its approval, its duty would be to set it aside and grant a new trial.   But before the court can take a case from the jury on a demurrer to evidence it must be able to say that, admitting every fact proved which is favorable to plaintiff, and admitting everything which is fairly inferable from the evidence most favorable to plaintiff, he has utterly failed to make out some one or more of the material facts of his case.   (*Brown, Adm'r, v. A. T. & S. F. Rld. Co.*, 31 Kan 1, 1 Pac. 605 ; *Christie v. Barnes*, 33 id. 317, 6 Pac. 599.)   Measured by these rules, the case should have been submitted to the jury, and, therefore, the ruling submitting it to the jury afforded no ground for a new trial.   There was testimony tending to sustain the averments of the petition ; testimony from which the jury might have inferred that the scaffold was carelessly built, and that Richa, who built it and was in charge of the work when plaintiff went to his assistance, was culpably negligent.

The furnishing of a safe place to work and safe appliances with which to do the work are among the absolute duties of the master.   From the testimony a fair inference may be drawn that these duties were not performed.   It is said, however, that plaintiff

had an opportunity to examine and must have examined the scaffold before using it. According to the testimony he was told to go to the assistance of the carpenter, and when he went he found a scaffold erected upon which he was expected to work, and, unless there was a very obvious defect, he had a right to assume that it was properly built. (*Kelley v. Railway Co.*, 58 Kan. 161, 48 Pac. 843.) He took the precaution, it seems, to ask Richa if it was safe, and was told that a team could not pull it down.

We cannot say that he should have known of the insecurity of the scaffold. Unless his attention was drawn to defects or to the dangerous condition, he was not required to institute an investigation, but might rest on the assumption that the company had performed its duty. The posts and braces which supported the brackets of the scaffold rested on the track of a railroad recently built. The ground upon which the braces stood was somewhat loose, and the braces reached the ground over and across a rail of the track which acted as a fulcrum when there was a weight on the platform of the scaffold. When the men and material rested on the scaffold the effect was to spring the braces over the rail, tipping up their ends and thus rendering the structure insecure. It does not appear that his attention was drawn to this feature of construction nor to the danger to which he was exposed.

As we have seen, the scaffold was not built by him, and the accident occurred within a few minutes after he began work on it. It cannot be arbitrarily said that he knew, or should have known, of the danger to which he was exposed. Under the law, it is not only necessary that the employee shall know of the facts constituting the negligence of the master, or

have opportunity to know them, but, in addition to these facts, he must have known, or by the use of ordinary observation ought to have known or understood, the danger to which he was exposing himself by reason of those conditions.

It follows that the court erred in granting a new trial on the ground stated, and, therefore, its judgment must be reversed, with directions to enter judgment upon the findings and verdict.

All the Justices concurring.