No. 27,568.

EMMA CROUCH, as Administratrix, etc., *Appellant,* v. THE MISSOURI PACIFIC RAILROAD COMPANY, *Appellee.*

(259 Pac. 799.)

SYLLABUS BY THE COURT.

MASTER AND SERVANT—*Liability for Injury to Servant—Duty to Furnish Safe Tools and Appliances.* A part of the duty of an employee of a railroad company was to carry a long hose to the top of coaches and to put water in openings made in the coaches for that purpose, and while pulling the hose from one coach to another, it broke at a place where it had been spliced and mended by another employed for that purpose and the employee lost his balance and fell to the ground and was severely injured. It was not the duty of the employee to inspect or repair the appliance he was using, and upon the evidence to which a demurrer was sustained, it is held that the evidence tended to show negligence of the company, and that whether the injured employee had knowledge of the defect or should have known of it, was a question for the jury to determine. The evidence in the record is deemed to be sufficient to take the case to the jury upon all of the issues involved.

Appeal from Montgomery district court; JOSEPH W. HOLDREN, judge. Opinion filed October 8, 1927. Reversed.

*M. D. L. Cox* and *Charles D. Ise,* both of Coffeyville, for the appellant.

*J. M. Challiss, W. P. Waggener,* both of Atchison, and *S. H. Piper,* of Independence, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: Emma Crouch brought this action against the Missouri Pacific Railroad Company to recover for injuries alleged to

---

Master and Servant, 39 C. J. pp. 723 n. 68, 725 n. 81, 827 n. 44, 834 n. 29, 1188 n. 14, 1202 n. 68; 18 R. C. L. 587.

20—124 KAN.

have been sustained by her husband, Chas. Crouch, while in the employ of the defendant, which injuries were caused by defendant's negligence and resulted in his death. In its answer the defendant denied that the injuries were the result of its negligence, alleged that they were due to the negligence of Chas. Crouch himself, and that the risk and hazards of handling a defective appliance at the time of the injury were assumed by him. A release and satisfaction of the damages resulting from the injuries was pleaded by defendant. At the close of plaintiff's evidence a demurrer to it was sustained by the court, and from that decision plaintiff appeals.

Chas. Crouch was employed by the defendant at Coffeyville, to clean coaches, and a part of his duty was to put water into them. The method of putting water in coaches was by attaching a long hose to a hydrant, carrying the end of the hose to the top of the coaches, pulling it along and putting water through openings left there for that purpose. The evidence tends to show that on the day the accident occurred coaches were spotted near the hydrant to which the hose was attached. Crouch placed a ladder at the side of a coach and climbed to the top of it, carrying the long hose loaded full of water with him, the water being shut off at the nozzle and not at the hydrant. On reaching the top of the coaches Crouch pulled the hose along from one car to another, and it was necessary to use considerable force, and while doing so the hose broke or pulled apart where it had been spliced, causing him to lose his balance and fall on his head and shoulders upon a brick pavement at the side of the coaches, thereby suffering severe injuries which, it is said, finally caused his death.

One witness testified the hose was 175 feet long, that the break was where there was a joint or splice. The repair had been made by placing a metal pipe inside of the rubber, bringing the ends of the hose together, placing clamps or bands around each side of the break or joint. He testified further that the break appeared as if one part had slipped off the pipe and was in the part of the hose that was down upon the ground; that the piece broken off was about 15 to 20 feet long.

Another witness said the hose was larger than garden hose and was about 100 feet long. There was some conflict in the testimony as to the size and length of the hose. Testimony was given to the effect that those who handled the hose did not repair or inspect it;

that when it became broken or defective the hose was sent to the shop, where it was repaired by an employee named Zimmerman, who had been assigned to that duty, and when the work was done and the hose tested it was returned for use again. It appears that hose was occasionally cut by cars passing over it, and it was also shown that in no event was it the duty of car cleaners either to inspect or repair hose.

In support of the ruling on the demurrer it is insisted by defendant that the appliance was a simple one, substantially similar to a garden hose, with which everyone is familiar, and that the risk and hazard of a defect or break in the hose was one assumed by the employee handling it. It is a recognized rule of law that it is the duty of the master to use ordinary care in furnishing reasonably safe tools and appliances to his servant with which to perform his work. The master is required not only to exercise that degree of care in furnishing the appliances originally, but it is his duty to use ordinary care to make repairs and keep the appliances in a reasonably safe condition. While the appliance used was simple in construction, it was one furnished by the railroad company and one which it undertook to keep in repair. If the duty of inspection and keeping the appliance in condition had been placed upon Crouch, or if the danger or defect was so open and obvious that he must have known of it, a recovery of damages might be barred. Here, however, the duty to repair the hose and to keep it in safe condition had been delegated to another employee, for whose negligence the company was responsible. The appliance was defective or unsafe or it would not have pulled apart. Crouch was using it in the ordinary way, the manner in which he was required by the company to use it, in putting water into coaches. He had a right to assume that the appliance was in a reasonably safe condition for use, but manifestly it was not and it does not appear that the defect was known to him. In *Emporia v. Kowalski*, 66 Kan. 64, 71 Pac. 232, it was said:

"It is the duty of a master to furnish a safe place for his servants to work, and reasonably safe tools and appliances to work with, and the employee, without instituting an investigation to ascertain the condition of the premises, may assume that the master has performed this duty." (p. 67.)

In a case where a sledge hammer, a simple tool, was used by an employee, a sliver of steel broke from the face of the hammer sup-

plied by the defendant and used by a helper, injuring his eye. The hammer was defective in that there were breaks on its face, and upon the contention that the employee should have observed its defective condition, and was himself guilty of negligence in continuing to work with the defective tool, also that he assumed the risk of injury from the use of the hammer, and hence the defendant was not liable for the injury, it was held that the company was negligent; that the risk of injury from the defective hammer was not assumed by the employee, and that whether the employee saw the defect in the hammer or should have seen it was a question for the jury to determine. (*Railway Co. v. Quinlan,* 77 Kan. 126, 93 Pac. 632.) In the course of the opinion it was said:

"No duty rested upon the plaintiff to make an independent investigation of the sledge which the helper brought to the work, for the purpose of ascertaining if it was safe for use. It was the master's duty to provide the helper with a fit tool. It was not incumbent upon the plaintiff to stop his work to see if that duty had been performed. He could rest upon the assumption that the master would not permit a helper to appear with a defective sledge. Therefore, unless his attention was in fact drawn to the imperfections of the sledge, or unless the sledge was so obtruded upon his gaze that he could not but observe it, the injury could not be charged to any want of care or breach of duty on his part." (p. 128.)

Further along it was said as to assumption of risk:

"A servant assumes only those hazards which are the natural incidents of the employment. Tools which are dangerously defective are not the natural incidents of any employment. It is the master's absolute and unassignable duty to supply safe ones. If defective tools are furnished the servant may assume the risk attending their use, but he can be held to have done so only when he has knowledge or the equivalent of knowledge of the facts and of the danger." (p. 137.)

See, also, *Brinkmeier v. Railway Co.,* 69 Kan. 738, 77 Pac. 586; *Steele v. Railway Co.,* 87 Kan. 431, 124 Pac. 169; *Tecza v. Sulzberger & Sons Co.,* 92 Kan. 97, 140 Pac. 105; *Brooks v. Mfg. Co.,* 94 Kan. 86, 145 Pac. 840.

We conclude that the case should have been submitted to the jury. There was evidence tending to show the negligence on the part of plaintiff, and under the evidence it cannot be held as a matter of law that the plaintiff assumed the hazard of the use of the defective appliance.

The defenses alleged were not reached, and hence the defendant has had no opportunity to make a showing as to Crouch's knowledge of the defect in the appliance he was using. As the case stood when

the demurrer to the evidence was filed, the question whether he saw the defect and understood the danger or should have known of it was a question for the jury to determine.

The judgment sustaining the demurrer is therefore reversed and the cause remanded for further proceedings.