No. 35,813

Rex J. Fishburn, *Appellee,* v. International Harvester Company, *Appellant.*

(138 P. 2d 471)

Opinion filed June 12, 1943.

*George C. Spradling,* of Wichita, argued the cause, and *Joseph G. Carey, W. F. Lilleston, Henry V. Gott* and *A. M. Buzzi,* all of Wichita, were on the briefs for the appellant.

*Harold H. Malone,* of Wichita, argued the cause for the appellee.

The opinion of the court was delivered by

PARKER, J.: This was an action to recover damages for personal injuries alleged to have been caused as the result of the failure of an employer to furnish safe and proper tools for the use of his employee.

The petition alleged in general terms that the plaintiff was employed by the defendant as a mechanic in a machine and repair shop operated by the latter in the city of Wichita, and in the course of his employment was directed to perform certain work upon one of defendant's trucks, the performance of which required plaintiff, among other things, to hammer on a bolt which was being fitted into a hinge; while engaged in the performance of such duty the plaintiff lightly tapped the head of the bolt with the hammer furnished by defendant for that purpose and immediately a small fragment of metal separated from the hammer and flew into plaintiff's left eye, with the result he eventually lost the sight thereof and suffered

other damage, a detailed statement of which is unimportant to a determination of the issues involved in this appeal; on the date of occurrence of the injury the defendant was engaged in a business, within the terms and provisions of the workmen's compensation act of the state of Kansas, and had filed an election not to come within the provisions of such act, which election was in force and effect at that time.

With respect to the negligence relied upon by plaintiff, the petition contained the following specific allegations:

". . . That plaintiff procured a hammer for said purpose from defendant's tool crib containing hammers and other tools furnished by defendant for said purpose. That said hammers were all cast hammers which had been in long and continuous use in defendant's shop, the exact time being unknown to plaintiff, . . .

"That defendant negligently furnished plaintiff with an unsafe and dangerously defective tool with which to drive said metal bolt and negligently failed to furnish plaintiff with a safe tool with which to drive said bolt in that said hammer was a cast hammer and in that said hammer so furnished was old and had been used previously, the exact time and manner being unknown to plaintiff so as to weaken said hammer in such degree as to make it susceptible to giving off slivers when used for pounding against metal objects. That defendant through its agents and servants knew, or in the exercise of reasonable care ought to have known the defective condition of said hammer and of its likelihood to throw off slivers when subjected to such use as plaintiff made thereof, and of its likelihood to cause injury such as plaintiff suffered."

To the petition, the material portions of which have heretofore been generally related or specifically quoted, the defendant demurred on the ground the allegations thereof failed to state a cause of action. The demurrer was overruled and the defendant has appealed.

It is apparent the appellee's cause of action is predicated upon the doctrine announced by this court on various occasions, that it is the duty of the master to furnish his servant with a safe place in which to work and with safe instruments for the work in which the servant is engaged. (See *Packing Co. v. Sedlack,* 69 Kan. 472, 77 Pac. 102; *Bridge Co. v. Miller,* 71 Kan. 13, 80 Pac. 18; *Atchison, T. & S. F. R. Co. v. Moore,* 29 Kan. 632, 633; *Starkweather v. Dunlap,* 103 Kan. 425, 173 Pac. 1122; *Iron Works v. Green,* 79 Kan. 588, 591, 100 Pac. 482, and *M. K. & T. Rly. Co. v. Young,* 4 Kan. App. 219.)

In addition it has also been held it is not only the duty of the master to provide for his employees a safe place to work, including structure and surroundings, and safe and reasonably suitable machinery, tools, implements and appliances with which to work, but

that the employees may enter upon the discharge of their labor assuming these duties have been performed by the employer. (See *Emporia v. Kowalski,* 66 Kan. 64, 71 Pac. 232; *Railway Co. v. Loosley,* 76 Kan. 103, 113, 90 Pac. 990, and *Buoy v. Milling Co.,* 68 Kan. 436, 75 Pac. 466.)

Likewise, it has been held that if the master delegates those duties to another such other becomes a vice principal for whose acts the principal is liable. (*Kelley v. Ryus,* 48 Kan. 120, 29 Pac. 144; *Mining Co. v. Robinson,* 67 Kan. 510, 73 Pac. 102; *Carillo v. Construction Co.,* 81 Kan. 823, 827, 106 Pac. 1050, and *Kreigh v. Westinghouse & Co.,* 86 Kan. 838, 122 Pac. 890.)

It has also been decided the ordinary risks assumed by an employee are those only which occur after due performance by the master of those duties which the law imposes on him. (*Emporia v. Kowalski,* supra, and *Crouch v. Missouri Pac. Rld. Co.,* 124 Kan. 305, 259 Pac. 799.)

And, it has been held where an employee was injured as a result of having been furnished defective tools and appliances that in such case it cannot be said as a matter of law either the danger was so obvious that the employee must have known of it or that it was so remote the employer could not by chance have had knowledge of it and that both questions were for the jury. (*Smith v. Railroad Co.,* 108 Kan. 151, 194 Pac. 318.) Also that a finding of a jury, supported by evidence, that the master has failed to provide safe tools is conclusive upon review. (*Packing Co. v. Sedlack,* supra.) So, also, that where evidence is introduced on the trial which if uncontradicted would fairly prove all that is necessary for the plaintiff to prove in order to make out his case, it is error for the trial court to find for the defendant, although such evidence might be contradicted by other evidence. (*Kelley v. Ryus,* supra.)

On behalf of appellant it is urged that even if the rules heretofore announced are applicable generally to cases where the master has failed to supply his servant with tools reasonably safe and suitable for the work in which the servant is engaged, there is an exception to such rule, universally recognized, which holds that the duty does not exist with respect to simple or common tools, from the use of which no danger is reasonably to be apprehended or as to which the employee is in a better position to discover defects than the employer.

The answer to the question in issue does not rest upon the force

and effect heretofore given to the simple-tool doctrine by this court and we shall not here attempt to review those decisions. What we are concerned with is whether the petition stated a cause of action. With that thought in mind we shall direct our attention to the allegations thereof and the decisions pertinent to a determination of its sufficiency, keeping in mind that under our decisions where a court is called upon to rule on a demurrer to a petition, against which no motion to make definite and certain has been leveled, the statement of facts to be found therein must be considered with a most tolerant and generous view.

Stripped of all unnecessary verbiage the petition, with respect to the negligence of appellant, alleged that appellant furnished for the work required of appellee certain hammers, all of which were cast hammers, had been in long and continuous use, had been used previously in such manner as to weaken them in such degree as to make them susceptible to giving off slivers when used for pounding against metal objects, and that defendant knew, or in the exercise of reasonable care ought to have known, of the defective condition of such hammers and of their likelihood to cause injury such as plaintiff suffered. It is true plaintiff used but one of the hammers, but the petition expressly described all of them made available for his use as being similar in kind and character.

Pertinent general rules, the application of which depends, of course, in every case upon the factual situation existing, are to be found—

In 39 C. J. 308, § 441, which reads:

"It is the positive duty of a master to furnish his servant with reasonably safe instrumentalities wherewith, and places wherein, to do his work. This obligation is rarely, if ever, made an express stipulation of the agreement between the employer and the employee, but whether it is to be regarded as an implied term of the contract or is created by operation of law as incidental to the relationship it is universally treated as existing. The duty imposed is a continuing one, and in the performance of these obligations imposed by law, it is essential that regard should be had not only to the character of the work to be performed, but also to the ordinary hazards of the employment, and the servant may assume that the master has performed such duty. . . ."

In 39 C. J. 321, 322, § 444, which states:

"Whether the master has exercised reasonable care in furnishing his servant reasonably safe instrumentalities and a place for work depends in some degree upon the maturity, intelligence, and the discretion of the servant employed, and in the case of youthful employees he must exercise a degree of care which has regard for their youth and inexperience. But where a servant is of full

age and ordinary intelligence, the rule that the master must exercise ordinary care to provide reasonably safe tools for his servants does not apply when the tools are of a simple nature in which defects can be readily observed. A master cannot escape liability, however, on the ground that the safe place or appliances doctrine is inapplicable where the servant had no knowledge of defective conditions and the danger was not so obvious that he should have observed it, and it has been held that the degree of care which the law requires of a master is greater than that which is required of the servant, and a master may be chargeable with negligence in failing to ascertain a danger where the servant is not."

In 35 Am. Jur. 571, § 140, holding an employer is bound to see that his instrumentalities are maintained in safe condition, wherein it is stated:

". . . In this respect, also, the employer's duty and liability may be affected by the so-called 'simple' or 'common tool' rule; an employer's liability for injury to his employees rests upon the assumption that the employer has a better and more comprehensive knowledge than the employees, and ceases to be applicable where the employees' means of knowledge of the danger to be incurred is equal to that of the employer, which is the case where the instrument or tool, the defect in which causes the injury, is of such simple character that a person accustomed to its use cannot fail to appreciate the risks incident thereto."

In 35 Am. Jur. 573, 574, § 143, which states:

"To the general rule that an employer is bound to inspect and test the tools and appliances which are furnished to his employees and maintain them in a state of repair, there is an exception in the case of common or simple tools. As to these instrumentalities, it is settled that no duty of inspection devolves upon the employer if the tools are reasonably safe at the time when they are furnished. . . . Again, a case for recovery is presented where the evidence shows that whereas the employee did not know of the defective condition of the offending tool, the employer had actual knowledge thereof."

Fortunately, in our consideration of this question we are not obliged to rely upon general legal statements of the character just recited but can be guided by decisions of this court which are pertinent and in point. Inasmuch as appellant urges the common tool doctrine as a bar to the sufficiency of the petition we shall now refer to some of our decisions which deal with actions predicated upon injuries received from defective common tools.

*Crouch v. Missouri Pac. Rld. Co.*, 124 Kan. 305, 307, 259 Pac. 799, was a case wherein a servant had suffered an injury due to the negligence of the master in furnishing a defective hose and the trial court had sustained a demurrer to the petition. In the opinion in this case this court said:

"In support of the ruling on the demurrer it is insisted by defendant that the appliance was a simple one, substantially similar to a garden hose, with which everyone is familiar, and that the risk and hazard of a defect or break in the hose was one assumed by the employee handling it. It is a recognized rule of law that it is the duty of the master to use ordinary care in furnishing reasonably safe tools and appliances to his servant with which to perform his work. The master is required not only to exercise that degree of care in furnishing the appliances originally, but it is his duty to use ordinary care to make repairs and keep the appliances in a reasonably safe condition. While the appliance used was simple in construction, it was one furnished by the railroad company and one which it undertook to keep in repair. If the duty of inspection and keeping the appliance in condition had been placed upon Crouch, or if the danger or defect was so open and obvious that he must have known of it, a recovery of damages might be barred. Here, however, the duty to repair the hose and to keep it in safe condition had been delegated to another employee, for whose negligence the company was responsible. The appliance was defective or unsafe or it would not have pulled apart. Crouch was using it in the ordinary way, the manner in which he was required by the company to use it, in putting water into coaches. He had a right to assume that the appliance was in a reasonably safe condition for use, but manifestly it was not and it does not appear that the defect was known to him. . . ."

Later, and after this same case had been tried in district court and a judgment rendered in favor of the plaintiff, the servant, this court in *Crouch v. Missouri Pac. Rld. Co.*, 128 Kan. 26, 276 Pac. 81, notwithstanding the contention of the appellant, the master, that its demurrer to the evidence should have been sustained because of the failure of the evidence to show negligence, on the theory the water hose was a simple tool and that the burden of inspection of it for defects was upon the employee and he assumed the risk, and that it was an inevitable accident, held:

"The assumption of risk by an employee begins after the employer has performed his full duty by providing the workman with safe and reasonably suitable tools, and failure to furnish or provide such will constitute negligence unless the workman knew of the defective condition or could have known of it by reasonable observation." (Syl. ¶ 1.)

*Railway Co. v. Quinlan*, 77 Kan. 126, 93 Pac. 632, was a case where a sledge hammer was used by an employee. The hammer was defective, and there were breaks on its face from which a splinter of steel broke and caused injury to the servant's eye. On the contention the employee should have observed its defective condition, and was himself guilty of contributory negligence in continuing to work with the defective tool, also that he assumed the risk of injury from the hammer, and hence the employer was not

liable, it was held the company was negligent. In the opinion it was said:

"With but slight modification this syllabus and opinion [referring to *Buoy v. Milling Co.*, 68 Kan. 436] could be adopted in the present case. The fact that the helper used a sledge the appearance of which condemned it was not conclusive upon the plaintiff. Such fact did not bind him to knowledge of the sledge's unfitness for use or appreciation of the danger in using it. His relation to the sledge was not the same as that of the defendant, who was obliged to perform the active duty of furnishing its helpers with safe sledges. The plaintiff was under no duty to examine the sledge or to inquire into its condition. He could only be held to knowledge of facts actually brought home to him, or which, under the circumstances, he could not but possess; and there is no warrant in the law for arbitrarily attributing such knowledge to him. So much being clear, it is plain the petition stated a cause of action and the court was required to proceed to a trial. . . .

"A servant assumes only those hazards which are the natural incidents of the employment. Tools which are dangerously defective are not the natural incidents of any employment. It is the master's absolute and unassignable duty to supply safe ones. If defective tools are furnished the servant may assume the risk attending their use, but he can be held to have done so only when he has knowledge or the equivalent of knowledge of the facts and of the danger. . . .

"It is said the test of the tool was use; that the master could learn whether the tool was defective only by putting it to use, and that while the tool was in use the plaintiff assumed the risk. The argument is unsound in several respects, but it is enough to note a single flaw: The hammer was too old. The test had been made, and the proof of deficiency was written upon both ends of the implement long before the plaintiff lost his eyesight. When ample evidence of unsuitability for use had been supplied by use the plaintiff had the right to rely upon the master to perform its duty to take up the tool and no longer endanger his safety by permitting it to be used." (pp. 130, 137, 138.)

In *Steele v. Railway Co.*, 87 Kan. 431, 124 Pac. 169, it was held:

"When the evidence supports a finding of negligence in furnishing a defective tool and does not conclusively show that the injured workman knew or ought to have known of such defect and its probable consequences, a verdict against the employer, approved by the trial court, will not be disturbed." (Syl. ¶ 2.)

And in the opinion said:

"It is argued that Steele knew as much about the chisel as the defendant did and therefore the plaintiff cannot recover. But he had a right to work inside the tank by candlelight until the electric light was restored or replaced and he was authorized to assume that his employer would supply him with tools fit to work with. If the chisel was in fact defective, as the evidence shows, then he was not at fault for using it unless he knew or reasonably should have known of its defect and the dangers likely to arise therefrom. . . .

"When Steele went to work in the tank he could rightfully assume that the company would provide him with such tools and equipment as to make it reasonably safe to work there, and while he knew there was danger of chips flying from the rivets or from the tank, or from a sledge or chisel, he was not called upon so to examine such tools in advance as to assure himself that the ordinary hazards incident to the work when performed with proper tools were to be increased by supplying those which were defective." (pp. 436, 437.)

To the same general effect is *Brooks v. Manufacturing Co.*, 94 Kan. 86, 90, 145 Pac. 840.

We are fully aware that some of the conclusions announced by the court in the preceding cases were influenced by the fact that tools had been furnished the servant by a helper or some other employee of the master, but there is nothing, even where that situation exists, to change the rule that the assumption of risk by an employee begins after the employer has performed his duty by furnishing the employee reasonably safe and suitable tools, and failure will constitute negligence unless the employee knew of the defective condition or could have known of it by reasonable observation.

The gist of appellant's argument, as we understand it, is that when a master knowingly furnishes a servant with a number of simple tools, all of which are adapted for use in a certain kind of work and all of which are defective, that irrespective of their condition, and regardless of whether the servant knew or should have known, or could have known, of their condition, then, the simple tool doctrine enters into the picture, and bars the servant from bringing an action, on the theory the master is guilty of no negligence in furnishing such defective simple tools, and hence the servant has no cause of action against him on the basis of negligence or any other basis. We experience very little difficulty in holding that no such rule prevails in Kansas. To the contrary, when such a condition arises a cause of action may properly be predicated upon the alleged negligence of the master and the question of liability for such negligence is one of fact to be determined by evidence, subject, of course, to the application of existing laws determining the duties, obligations, responsibilities and liabilities of both masters and servants in cases where the latter are engaged in the performance of labor requiring the use of tools of such character. In such a case the decisions heretofore cited and referring to the general duty of the master to furnish tools reasonably safe and suitable for the work in which the servant is engaged are as much

determinative of the rights of the parties as those just cited where the factual situation limited our consideration to liability of such parties in the use of defective simple tools.

Up to this point we have directed our attention to the question of whether negligence in the furnishing of a defective simple tool under the circumstances of the instant action could be relied upon as the basis for a cause of action. Having determined that question in the affirmative, we now examine the petition to ascertain if the allegations therein contained stated a cause of action.

We find, and have been referred to, no Kansas decisions holding that a pleading which contains facts showing an injury resulting from the use of a common tool, where all of the tools originally furnished for use in the work to be performed were defective, fail to state a cause of action. The nearest approach to that question in our decisions is to be found in *Cheek v. Eyth*, 149 Kan. 586, 89 P. 2d 11, wherein this court, after calling attention to the fact the only negligence alleged in the petition was failure to provide a safe tool with which to work, approved its sufficiency by affirming a judgment on the ground the workman did not assume the risk incident to his employment, and in *Tartar v. Missouri-K.-T. Rld. Co.*, 119 Kan. 738, 740, 241 Pac. 246, wherein it was said:

"In the present case there was nothing in the petition to disclose that the plaintiff saw or knew the danger which resulted in his injury. The petition, therefore, was good as against the demurrer based on assumption of risk by the plaintiff. . . ."

As stated, these cases are not entirely determinative of the instant question, but we feel called upon to remark that if such is the rule in cases where the defense of assumption of risk is open to the master it certainly should be the rule in cases where, as in the instant one, it is not available to him by reason of the fact he has elected not to come within the provisions of the workmen's compensation act (G. S. 1935, 44-544).

The petition alleged that the appellant knowingly furnished hammers all of which were defective in that they were all old, cast hammers which had been in long and continuous use and were susceptable of giving off slivers when used for pounding against metal objects. We believe those allegations, along with the other allegations hereinbefore more fully related, giving the petition benefit of every reasonable intendment and presumption to which it was entitled as against a demurrer, were sufficient and that the petition stated a

cause of action. It may well be that evidence adduced at the trial will be insufficient to establish liability but that is an open question and not before us for consideration in this appeal.

Counsel for both appellant and appellee have cited many interesting cases which have been very helpful to us in our investigation of the authorities determinative of the question here involved. We have examined all cases cited by them, as well as many others. Most of them deal with cases where the petition was conceded to state a cause of action and the question as to liability of the parties was raised during or subsequent to a trial of the issues involved. As to such questions there is some conflict in the decisions and some confusion in the reasoning responsible for the conclusions announced. However, having once determined the furnishing of simple tools under the circumstances related in the petition is negligence on which a cause of action can be based, such decisions cease to be of value and it would serve no useful purpose to prolong this opinion in reviewing them.

Nor do we feel we should here attempt to determine the effect of G. S. 1935, 44-544, on the rights of the parties in cases of this character since a determination of that question is not required to arrive at the conclusion the petition states a cause of action.

The judgment of the trial court in overruling the demurrer to the petition is affirmed.