No. 26,808.

JOHN POWELL, *Appellee*, v. THE KANSAS-MISSOURI RAILWAY & TERMINAL COMPANY, and THE KANSAS CITY, KAW VALLEY & WESTERN RAILWAY COMPANY, *Appellants*.

SYLLABUS BY THE COURT.

1. WORKMEN'S COMPENSATION ACT—*Release of Claim—Validity—Mutual Mistake of Fact.* In a claim for workmen's compensation a compromise was made and a release executed for an agreed consideration. The plaintiff sought to set aside the release on the ground of fraud and also of mutual mistake. The jury found that the release was not procured by false representations or fraud, but made a general finding that there was a mutual mistake of the parties as to the nature and extent of plaintiff's injuries. In explanation of its finding the jury found that the mutual mistake of fact consisted in the fact that the parties did not know and that both were uncertain as to the results of the injury. Under the findings it is held that the compromise and release cannot be regarded as having been made under a mutual mistake of fact and that they are obligatory upon the parties.

2. TRIAL — *By Court — Submission of Special Issues to Jury — Findings Approved by Court Deemed Adopted.* The case was one triable by the court, but a jury was called and the case was submitted to it upon the issues joined, with instructions and a direction to return special findings, including a general verdict. Special findings and a general verdict were returned. Motions to set aside the special findings and verdict for lack of support in the evidence and also to render judgment upon the findings for the defendant were recognized but overruled by the court and judgment given for

---

Appeal and Error, 3 C. J. pp. 985 n. 34, 987 n. 41. Compromise and Settlement, 12 C. J. p. 337 n. 3. Contracts, 13 C. J. p. 370 n. 25. Trial, 38 Cyc. p. 1938 n. 93. Workmen's Compensation Acts, C. J. p. 108 n. 96.

the plaintiff. The court, having recognized and approved findings of the jury, is deemed to have adopted them, and hence they are open to review upon appeal.

Appeal from Wyandotte district court, division No. 1; EDWARD L. FISCHER, judge. Opinion filed October 9, 1926. Reversed.

J. E. McFadden and O.· Q. Claflin, Jr., both of Kansas City, H. M. Shughart and L. R. Johnson, both of Kansas City, Mo., for the appellants.

H. E. Dean and E. E. Martin, both of Kansas City, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.:   This was an action to recover under the workmen's compensation act.   John Powell suffered an injury to his hand while unloading rails, by reason of which he was permanently partially disabled. After treatment for several weeks by the doctor of the company he was discharged from further treatment, and later executed a release in consideration of the payment of $141.88. A year or more afterwards, demand for arbitration having been refused, this action was brought. The plaintiff alleged the nature and extent of the injury, the demand for compensation, the refusal of defendants to pay compensation, and the fact that he had been paid compensation to the amount of $75 during a period of four weeks following his injury. He therefore asked compensation to the amount of $2,905 less the $75 already paid to him, and also $150 for surgical attention and nursing.

Among other defenses the defendants set forth a settlement and compromise made with plaintiff and a release signed by him. In reply the plaintiff stated that he signed the release upon the theory that it was a mere receipt for money paid and was not intended to affect his right of recovery for the injury. He further stated that he did not know the extent of the injury at the time he signed the release, and that it has since developed that the injury is permanent and is a partial disability. It was further alleged that he is an illiterate man, and at the time the paper was executed it was represented by the defendants that it was a receipt for money only and not a release from further liability.

It is conceded that this was a court case and that a jury was called in an advisory capacity only. Upon the evidence submitted, the jury were instructed at length as to the issues involved in the action, including the question whether the release was obtained by false and fraudulent representations or that it was executed under a

mutual mistake of fact. The jury were advised that before the release, which appeared to be valid on its face, could be overthrown it must be shown that the defendants or either of them falsely told the plaintiff or led him to believe that the release was only a receipt for money paid, and that plaintiff believed the representation to be true and was therefore deceived and induced to sign the paper. As to mutual mistake of fact, the jury were told that before the release could be overthrown it must be proven that at the time it was executed both plaintiff and defendants were mistaken as to the extent of plaintiff's injury, and because of such mistake the release was entered into by the plaintiff. Special findings were submitted to the jury, which, with their findings, are as follows:

"1. Did the plaintiff at the time he signed the claimed release set up in defendants' answer understand the character of said release and the force and effect of the memorandum on the back thereof? A. No.

"2. Were the plaintiff and defendant at the time the plaintiff was discharged by Doctor Hassig from further treatment mutually mistaken as to the extent and permanency of plaintiff's injury? A. No.

"3. Is the plaintiff, on account of the injury to his left hand and as shown by the evidence, permanently partially disabled? A. Yes.

"4. Did Doctor Hassig, at any time after plaintiff's injuries ever tell the plaintiff that his finger would entirely recover from the effects of the injury, and that his hand would be normal? A. No.

"5. At the time plaintiff signed the release in question, was there a mutual mistake of fact between the plaintiff and the defendant as to the nature and extent of plaintiff's injuries? A. Yes.

"6. If you answer question No. 5 in the affirmative, then state fully of what such mutual mistake of fact consisted. A. The corroboration of testimony that they did not know.

"7. If you answer question No. 5 in the affirmative, then state fully what was said by plaintiff and defendant at the time the release was signed that caused or produced a mutual mistake of fact. A. Statements of both plaintiff and defendant that they were uncertain as to the results of the injury.

"8. At the time plaintiff signed the release in question, was he caused to sign the same by reason of any false or fraudulent statements made to him by the defendant? A. No.

"9. (No answer.)

"10. (No answer.)

"11. At the time the release in question was signed by plaintiff, did plaintiff have said release in his possession and did he know or have the opportunity to know what he was signing? A. Yes.

"12. Do you find that at the time plaintiff signed the release in question he could read printed and written matter? A. Yes.

"13. Did the plaintiff at and before the time of signing the release in ques-

tion, make any complaint or statement to the defendant that he did not understand or know what he was signing? A. No."

With these findings the jury returned a verdict in favor of the plaintiff and against both defendants for $576. The defendants moved the court to set aside the answers to special questions 1, 3 and 5, on the ground that they were not supported by the evidence and were in conflict with it.

There was a further motion for judgment in favor of the defendants on the special findings returned by the jury. Defendants filed a motion for a new trial which was withdrawn from the consideration of the court by the defendants prior to the rendition of judgment. The plaintiff then moved the court to enter a judgment in his favor for $2,406. The court overruled the defendant's motions and sustained the motion of the plaintiff and entered judgment in favor of the plaintiff for $2,406.

Three specifications of error are made, viz.: the refusal to set aside the answers to questions 1, 3 and 5; the entering of judgment in favor of plaintiff, and the refusal to enter judgment for defendants. The first assignment of error is not open to consideration, a motion for new trial having been withdrawn, the trial court was given no opportunity to review the evidence or determine whether or not it sustained the findings of the jury.

"We have frequently held that all errors occurring during the trial, including supposed erroneous findings of the court or jury, are waived and cannot be considered by this court unless a motion for a new trial founded upon and including such supposed errors, has been made and overruled in the district court." (*Decker v. House*, 30 Kan. 614, 616, 1 Pac. 584. See, also, *Bennett Grain Co. v. Davis, Director-general*, 114 Kan. 800, 220 Pac. 1031.)

The findings mentioned must therefore be treated as ascertained facts, and whether they are sufficient to uphold the judgment is a question of law and is subject to review on appeal. The motion to set aside the verdict and give judgment in favor of defendants on the special findings of the jury fairly raised the question and the motion was overruled. The settlement and release is conceded to have been signed by the plaintiff. It was the principal defense and its validity the vital issue in the case. It was attacked on two grounds: One that it was procured by fraud and through fraudulent representations, and another that it was made by reason of mutual mistake as to a material fact. The issue of fraud was expressly

40—121 Kan.

found against the plaintiff as the jury answered that he was not caused to sign the release by reason of any fraudulent statements made to him by the defendants. In addition to this finding the jury found that when the plaintiff signed the release he could read printed and written matter, had the release in his possession, had an opportunity to know what he was signing, and when he signed it made no complaint that he did not understand or know what he was signing. In the writing signed by him was a statement that he had read it and that "before signing and sealing this release I have fully informed myself of its contents and meaning, and that I have executed it with full knowledge thereof." The effect of a compromise and release cannot be avoided by·a fact that the person did not read a writing which he signed where he is able to do so and there was nothing to prevent him reading it and no misrepresentations made as to its contents. (*Odrowski v. Swift & Co.*, 99 Kan. 163, 162 Pac. 268.) There being no misrepresentations and no fraud in procuring the execution of the release, that issue goes out of the case and the release must be upheld unless there was mutual mistake in its execution. Under the findings can it be said that there was a mutual mistake? The jury found specifically that there was a mistake by the parties as to the nature and extent of plaintiff's injury, but in answer to a question as to what such mutual mistake consisted of said under "the corroboration of testimony that they did not know," and to another question as to what was said by the parties that caused or produced a mutual mistake of fact they answered, "Statements of both plaintiff and defendant that they were uncertain as to results of the injury." It may·be added that Doctor Hassig, the defendant's doctor, had treated the plaintiff and finally discharged him from further treatment, and to the question of whether the defendants at the time of that discharge were mutually mistaken as to the extent and permanence of plaintiff's injury, answered "No."

The explanations of the jury giving the basis of their finding that there was a mutual mistake of the parties demonstrates that there was no mistake of fact. It amounted to no more than to say that there was doubt and uncertainty in the minds of both parties as to the result of the injury. Neither knew whether the result would be slight or of a permanent character. There was no error of fact, no belief or understanding of the existence of a fact·which did not exist.

The material fact was whether the result of the injury would be the stiffening of plaintiff's finger, and there was not even a prophecy what the result would be. That was a future event which neither party knew or attempted to forecast, and neither had any misconception as to that event. It was treated by both as a matter of doubt and uncertainty, and necessarily there was no mistake of fact which could have influenced the making of the compromise and release. Both being in doubt and not wishing to await the result, a compromise was agreed upon and a release executed. Compromises made without deception or fraud of any kind and which avoids litigation are encouraged by the courts. Here there was no deception nor had one of them an advantage over the other. There was no possession of knowledge by one and lack of it by the other, nor was there any fraudulent silence or concealment by either. They could have had no more than an opinion as to the result, which would have been a matter of prophecy. In *Tucker v. Atchison, T. & S. F. Rly. Co.,* 120 Kan. 244, 243 Pac. 269, the question of mutual mistake was involved. A release was executed by the plaintiff, and he claimed that the parties were both mistaken as to the future duration of his disability, and that the release therefore should be set aside. In deciding the case it was held that a mistake as to a future uncertain and unknowable effect of an injury or the future uncertain duration of a known condition will not of itself avoid a release. The permanency or duration of the disability was held to be a matter of opinion or conjecture of belief and not a mistake of fact. It was decided:

"In an action to set aside the second release on the ground of mutual mistake, *held,* that to justify rescinding a contract or release on the ground of mutual mistake, such mistake must be as to a past or present fact material to the contract and not a mere mistake in prophecy, opinion, or in belief relative to an uncertain event, such as probable developments from and permanency of a known injury." (Syl. See, also, *Harp v. Red Star Milling Co.,* ante, p. 451, 247 Pac. 856.)

The parties entered into the contract because of the uncertainty of a future contingent event. It is a compromise which they chose to make on account of the uncertainty involved as to the future effect of the injury. They purposely compromised and settled the doubtful claim, and in the absence of fraud or unfair conduct the compromise must stand, although the result of the injury turned out to be more serious and permanent than was anticipated by either or

both of the parties. (*Kowalke v. The Milwaukee Electric Railway & Light Co.*, 103 Wis. 472.)

It is said that this was a court case, that the court was at liberty to discard the findings of the jury and determine the case for itself, and that it in fact did so. The proceedings, however, show that the court was asked to set aside and disregard certain of the findings, but it overruled the motion made to that end. By its rulings it recognized the validity and force of the findings and by its approval must be held to have adopted them. While finding that the release was void and that the injury of the plaintiff was partially permanent, the jury by its general verdict and for some reason only awarded the plaintiff compensation in the sum of $576, but acting on the finding that plaintiff was permanently partially disabled and was not bound by the release, the court increased the compensation to $2,406, the amount he would have been entitled to under the statute if he had been entitled to any compensation. In the state of the record the findings of the jury are deemed to have been approved and adopted by the court as its own and are therefore open to review here. Holding that the compromise and release are valid, the judgment must be reversed, with the direction to enter judgment in favor of the defendants.