No. 28,500.

Emma Crouch, as Administratrix, etc., *Appellee*, v. The Missouri Pacific Railroad Company, *Appellant*.

(276 Pac. 81.)

Opinion filed April 6, 1929.

*S. H. Piper,* of Independence, and *J. M. Challiss,* of Atchison, for the appellant; *W. P. Waggener, O. P. May* and *B. P. Waggener,* all of Atchison, of counsel.

*M. D. L. Cox* and *Charles D. Ise,* both of Coffeyville, for the appellee.

The opinion of the court was delivered by

Hutchison, J.: The appeal in this case is by the defendant railroad company from a judgment rendered against it in favor of the administratrix of the estate of a former employee of the defendant, the plaintiff being the widow and dependent of the deceased. The action was under the federal employers' liability act, the petition alleging negligence of the defendant company in not furnishing reasonably safe equipment and appliances for the supplying of water to its passenger coaches and in not properly inspecting the hose to determine if it was in safe condition for the purpose for which it was intended; that the hose furnished was defectively spliced, and when being used by the deceased on top of passenger coaches to water

them and being drawn by him from one coach to another pulled apart and caused the deceased to lose his balance and fall to the pavement, striking the back of his head and shoulders, from which injury it is alleged he died about fourteen months later.

The answer, after a general denial, pleads contributory negligence, assumption of risk, and settlement, setting out a copy of the same as an exhibit. The reply admits the signing of such exhibit but alleges it was executed by reason of a mutual mistake as to the serious and fatal character of the injury, both parties believing at the time that the existing injury was only superficial and not serious. The jury rendered a general verdict for plaintiff for $2,500, designating $1,250 of it for loss of time and pain and suffering of the deceased, and $1,250 for plaintiff's pecuniary loss as beneficiary, and answered the several questions submitted as follows:

"1. Whose duty was it to inspect the hose which Crouch was using, to ascertain whether the same was in proper condition? A. Any employee using hose.

"2. Did Charley Crouch before receiving his injury on August 11, 1923, carefully inspect the hose and its connections to see that it was in proper condition? A. Just casual inspection.

"3. If Charley Crouch had have inspected the hose before using the same would its condition have been detected? A. No.

"4. Would an inspection by Charley Crouch of the coupling of the hose have disclosed the fact that the hose was liable to pull in two? A. No.

"5. Did Charley Crouch recover from his injury of August 11, 1923? A. No.

"6. After August 11, 1923, do you find that Charley Crouch returned to work for the defendant and worked twenty-four days in the month of October; thirty days in November; thirty-one days in December, 1923, and thirty days in January; twenty-nine days in February; thirty-one days in March; eleven days in April; twenty-seven days in May; and two days in June, 1924? A. Yes, with help of his son.

"7. If you answer the preceding question 'No,' then state what portion of the time from October, 1923, to June, 1924, inclusive, did the said Charley Crouch work for the defendant? A.

"8. Was Charley Crouch's full name, 'Charles Robert Crouch?' A. Yes.

"9. Was the death of Charley Crouch on the 24th day of October, 1924, due to ulcers of the stomach? A. No.

"10. If you answer the preceding question 'No,' then state what was the cause of the death of said Charley Crouch? A. Injuries resulting from fall from car.

"11. Why did the hose pull apart while Crouch was using it? A. Defective connection.

"12. Was the fall of Charley Crouch from the passenger coach on August 11, 1923, due to the negligent and careless manner in which he handled and pulled upon the water hose? A. No.

"13. What, if any, negligence do you find against the defendant? A. Failure to provide efficient equipment to water cars.

"14. If you find any negligence against the defendant, then state what agent, servant or employee of the defendant was responsible for such negligence. A. Whose ever duty it is to provide equipment.

"16. At the time plaintiff signed the release in question was there a mutual mistake of fact between the plaintiff and the defendant as to the nature and extent of plaintiff's injury? A. Yes.

"17. If you answer question No. 16 in the affirmative, then state fully of what such mutual mistake of fact consisted. A. Neither party realized seriousness of injury.

"18. If you answer question No. 16 in the affirmative, then state fully what was said by plaintiff and defendant at the time the release was signed that caused or produced a mutual mistake of fact. A. Both parties thought and said that Crouch was able to go back to work in a few days.

"19. At the time plaintiff signed the release in question was he caused to sign the same by reason of any false or fraudulent statements made to him by the defendant? A. No.

"20. If you answer question No. 19 in the affirmative, then state what officer or agent of the defendant company made such false or fraudulent statement. A. No.

"21. If you answer question No. 19 in the affirmative, then state what were the false and fraudulent statements made by the defendant which induced the plaintiff to sign the release. A."

Defendant insists that its demurrer to the evidence of the plaintiff should have been sustained because of the failure of the evidence to show negligence of the defendant, reasoning that the water hose was a simple tool and that the burden of inspection of it for defects was upon the employee and he assumed the risk, and that it was an inevitable accident. It will be observed in this connection that the testing of the hose was done in the shop when any repairs were made on the hose, by both water pressure and air pressure—a method not available to the car cleaner who was using the hose. After the injury it was observed that the separation of the hose which caused the deceased to lose his balance and fall was at a joint where the hose had been spliced by inserting a piece of gas pipe with a clamp or band around each end of the hose. The witnesses said it "slipped loose" and "pulled in two" at this splice. However simple the tool is, the efficiency of the repair of it where broken or cut may very properly be a matter not readily within the knowledge of a workman who uses it after being repaired, especially when such repairs must be tested by high pressure of air or water. Besides, the deceased was not the only one using this hose; it was

used by other car cleaners on the same and other shifts to water passenger coaches, and also by the freight crews to supply their coolers. The defect, if any, in this hose was in the repairing, because it pulled apart at the point of splicing. The assumption of risk by the employee begins after the employer has performed his full duty by providing the workman with safe and reasonably suitable tools, and any failure to furnish such would constitute negligence unless the workman knew of the defective condition or could have known of it by reasonable observation.

"The ordinary risks incident to the business assumed by an employee are those only which occur after the due performance by the master of those duties which the law imposes on him." (*Emporia v. Kowalski*, 66 Kan. 64, syl. ¶ 3, 71 Pac. 232.)

The pulling apart at the place where repaired eliminates the theory of its being an inevitable accident, and the evidence tends to show negligence on the part of the defendant and was sufficient to be submitted to the jury. We have no information as to whether there was more or less testimony on this subject offered by the plaintiff on this trial than on the former trial, where this court reached the same conclusion with reference to the demurrer to the evidence. (*Crouch v. Missouri Pac. Rld. Co.*, 124 Kan. 305, 259 Pac. 799.)

It is urged that the court erred in giving and in refusing to give instructions. We see no error in refusing the requested instruction illustrating and applying the unanimity rule to the question of ulcers of the stomach being the cause of the death. The formal instructions are not abstracted, but it will be presumed the jury was generally instructed that unanimity of conclusion was essential on all necessary allegations, and if so instructed it was entirely unnecessary to apply the rule to any one or more items of the evidence or features of the case. (*Converse v. Watts*, 127 Kan. 673, 275 Pac. 181.)

Appellant calls our attention to inconsistencies between two instructions given concerning the duties of the employer and employee as to the use of simple tools. The first one states the law and the second applies it to furnishing hose and inspecting and repairing the same. The criticism is of the statement of the abstract principle and not of its application. The first, we think, correctly stated the general rule, and whatever apparent difference there is in the application thereof is in favor of the defendant, and possibly goes a

little farther than our views on the subject already expressed in this opinion.

"Assumption of risk cannot be declared as a matter of law unless the employee knows, or should know, what the danger is and knowing the danger continues in the performance of his labor." (*Tartar v. Missouri-K.-T. Rld. Co.*, 119 Kan. 738, 740, 241 Pac. 246. See, also, *Railway Co. v. Quinlan*, 77 Kan. 126, 93 Pac. 632; *Brooks v. Manufacturing Co.*, 94 Kan. 86, 145 Pac. 840; 39 C. J. 342.)

The failure of the trial court to render judgment for the defendant on the answers to special questions notwithstanding the general verdict is claimed to have been error, because the negligence found by the jury is outside of the issues and proof and because the mutual mistake found by the jury was not a mistake of an existing fact but of some future condition or speculation as to the final result or effect of the injury. Both these points are good in theory, but we were able to find in the petition allegations as to negligence in failing to furnish reasonably safe equipment for the supplying of water, and that the hose was defectively spliced, which, with a general denial for answer, puts in issue matters to which the answer as to negligence that it consisted of "failure to provide efficient equipment to water cars" was pertinent. The showing that the hose did pull apart at the splice was some proof of its defective condition. It was clamped at both ends, but it "slipped loose."

The appellant suggests the similarity between this case and the case of *Powell v. Kansas-Mo. Rly. & T. Co.*, 121 Kan. 622, 249 Pac. 675, where the jury answered that the mutual mistake was "that they were uncertain as to the result of the injury." The court there very properly held "that was a future event which neither party knew or attempted to forecast, and neither had any misconception as to that event. It was treated by both as a matter of doubt and uncertainty, and necessarily there was no mistake of fact which could have influenced the making of the compromise and release." (p. 627.) The result of the injury is always a future event and speculative. The answers to questions 16, 17 and 18 in the case at bar do not deal with the future but with the present, namely, the time the settlement contract was made and executed. The answers were, "Neither party realized seriousness of injury," and "Both parties thought and said that Crouch was able to go back to work in a few days." Note they thought he *was* able to go back to

work. They did not realize the seriousness of the injury—not the result of the injury as in the above cited case. How serious was the injury? The injury occurred seven weeks before these conferences took place. He had been unconscious and blind a part of the intervening time, but now they all thought he *was* able to go back to work. A further significance of the evidence which doubtless prompted the addition of the words "in a few days" is the purpose of the deceased wanting to do some work at home before going back. It was not that he *will be* able to go back to work in a few days, but in effect they thought he was then able to go back to work but wanted to do some work around his home before going back. This certainly refers to a present existing fact—the seriousness of his injury—and the fact that he was able to go back to work.

The facts in this case as to mutual mistake of fact are more nearly like those in the case of *Koshka v. Railroad Co.*, 114 Kan. 126, 217 Pac. 293, where a settlement was made for an injury to the elbow of a workman, and the court affirmed the finding of a mutual mistake with reference to the same, using the following language in the opinion:

"It was also shown that he did not know he was seriously injured. Indeed, a few days after he was injured he returned to his job and tried to use his arm, and not for some time did he know the extent of his injury. He depended on what the defendant's doctor told him, 'that he was all right, he can go back to work,' and so, apparently, did the defendant's claim agent who settled with plaintiff." (p. 128.)

Both parties in the instant case thought the injury was superficial and slight and that he was ready to go back to work, whereas in fact the injury at that time was most serious and one from which the jury found he later died.

We have no difficulty in discriminating between this case and the Powell case in 121 Kansas, above cited, and holding in this case that there was evidence to support the finding of a mutual mistake, and therefore in sustaining the trial court in overruling the motion of defendant to render judgment for defendant on the special findings. Of course, without the finding of mutual mistake the settlement would be valid and binding, fraud having been eliminated by the jury, and under the authorities would have been as binding upon this plaintiff as upon the deceased if he had survived.

We find no prejudicial error in the record.

The judgment is affirmed.