**FARMERS MUTUAL AUTOMOBILE IN-
SURANCE COMPANY, Plaintiff,**

v.

**Lucas BUSS and Emma Buss,
Defendants.**

**No. T-2408.**

United States District Court
D. Kansas.

Dec. 1, 1960.

Addington, Jones, Davis & Haney, by
Charles L. Davis, Jr., George B. Trubow
and Frank M. Rice, Topeka, Kan., for
plaintiff.

Garlinghouse, Shaw & Hergenreter, by
Warren W. Shaw, William Hergenreter,
Topeka, Kan., and Donald Sands, Holton,
Kan., for defendants.

ARTHUR J. STANLEY, Jr., District
Judge.

Plaintiff has moved for a new trial, the
court having announced that judgment
would be for the defendants.

In its complaint, plaintiff seeks to es-
tablish the validity of a "husband and
wife release" admittedly executed by the
defendants on August 9, 1957. Defend-
ants assert the invalidity of the release on

the grounds of inadequacy of consideration, fraud in its procurement and mutual mistake of fact.

The court, after hearing the evidence, found that the execution of the release by the defendants was not procured by fraud or misrepresentation on the part of the plaintiff's adjuster, but that the release should be set aside because of mutual mistake of fact as to the nature and extent of the injuries sustained by Lucas Buss. Formal judgment has not been settled or approved pending a ruling on plaintiff's motion for a new trial.

There is no serious dispute as to the facts. Lucas Buss has brought an action against William H. Bruns in a state court, and the release with which we are here concerned has been raised as a bar to that action. Buss, when injured, July 23, 1957, was a passenger or guest in a motor vehicle owned and operated by H. E. McClellan, which was involved in a collision with another vehicle being driven by Bruns. Both McClellan and Bruns were insured by the plaintiff.

On July 25, 1957, Joseph H. French, an attorney acting as investigator and adjuster for the plaintiff, called on Lucas Buss, then under treatment at a hospital in Holton, Kansas, and obtained, in statement form, his version of the collision. At that time, French discussed with Lucas the medical payment coverage under McClellan's policy, but did not mention possible settlement of a claim against Bruns.

On August 6, 1957, French again saw Buss at the hospital, spending no longer than ten minutes with him, and discussed again the medical payment provisions of McClellan's policy, and for the first time the possible settlement of the personal injury claim against Bruns. French offered Buss $300 in settlement of the Bruns claim. His testimony was that he arrived at the figure by estimating Buss's stay in the hospital at six weeks, " * * and I figured ten dollars a day, which would be around $400, roughly, and I thought, then, that the medical pay would satisfactorily cover his hospital bills and his doctor bills and so on. Three hundred

dollars was to compensate him for his injury and for his loss of wages during the time that he was off." (Tr., p. 15).

On August 9, 1957, French came a third time to the hospital, this time bringing with him a draft payable to Buss and the hospital, in the amount of $500; a draft payable to Buss and his wife, in the amount of $300; and the release which is the subject of this action. Buss, his wife and his daughter-in-law were present. After some discussion as to the sufficiency of the amount, the release was signed by both defendants and the drafts were delivered to them. The $500 draft was endorsed by the payees and turned over to the hospital. The $300 draft was endorsed by the payees and negotiated by them.

By its terms, the release discharged Bruns, McClellan and the plaintiff from all claims, "of whatever kind or nature, which we or either of us now have or may hereafter have arising in any way out of, in consequence of or on account of all injuries to person, including those known and unknown, developed and undeveloped and unforeseen and unexpected developments and consequences of known injuries," arising out of the collision of July 23, 1957. The release contained the following provisions:

"We and each of us hereby accept said sums as a compromise and settlement of all claims on account of the dispute between the parties hereto as to whether the above named parties are liable to us, or either of us, or not, and also as to the nature, extent and permanency of the injuries sustained by us or either of us.

"We and each of us agree that in making this release, we are relying on our own judgment, belief and knowledge as to all phases of our claims and that we are not relying on representations or statements made by any of the persons hereby released or anyone representing them or physicians or surgeons employed by them."

At no time before the execution of the release did either Buss or French know

that Buss had suffered more than a broken leg. Neither was informed as to the seriousness of the fracture. French testified: "I learned from him that he had a broken leg and nothing else. * * * I knew it was a broken leg, that's all." (Tr., p. 27). "All I knew was he had a broken leg." (Tr., p. 110). He had not talked to a physician or a nurse about the injuries. He did not ask for nor see the medical records.

Buss knew only that his leg was broken. His physician, desiring not to alarm him, had not explained to him how seriously he was injured.

The injuries were serious, being described by the treating physician as "terrific." The fracture was comminuted and was located high in the upper third of the femur, taking in one of the trochanters. Buss remained in the hospital for ninety-two days, and for sixty days after returning to his home was confined to his bed. He was required to use crutches for four or five months after leaving his bed, and got about with the assistance of two canes for more than a year after disposing of the crutches. At the time of the trial, he was using one cane. The attending physician had for a time entertained some doubts as to his survival and, because of the danger of circulatory involvement, had considered seriously the possibility of amputation of the leg. As a result of the fracture, the injured leg is now two inches shorter than its mate. Hospital and medical expense totaled $1,100.

Plaintiff urges the validity of the release, asserting: (1) the desirability of upholding releases in order that litigation may be avoided; (2) the mistake, if any, was only as to the consequences of the known injury, not as to an existing fact; (3) the release specifically covered unknown injuries; and (4) even though there might have been a mistake, it was not as to a material fact.

It is true that the law favors the peaceful settlement of controversies and the consequent avoidance of litigation. This does not mean, however, that substantial justice may be defeated where a release of a claim for personal injuries is executed under mutual mistake of fact. Nilsson v. Krueger, 69 S.D. 312, 9 N.W.2d 783. And in Kansas, the practice of procuring releases from persons not yet recovered from recent injury has been judicially disapproved. Orr v. Railway Co., 98 Kan. 120, 157 P. 421.

A release such as the one under consideration may be avoided on the ground of mutual mistake only when the mistake is as to a past or present fact. The mistake must be more than a mere error in opinion, judgment or belief. To justify avoidance, a mistaken belief as to the probable developments from and permanency of a known injury is not sufficient. McMillin v. Farmers & Bankers Life Ins. Co., 167 Kan. 502, 206 P.2d 1061, 1066.

Here we have a situation where the releasor and the releasee both knew of the existence of a fracture of the leg of the releasor. Is this knowledge—this and no more—enough to bring this case within the rule announced in the McMillin case? I think not. In McMillin, the releasor became possessed of no new fact after executing the release, but "merely had a change of opinion resulting in a different conclusion based upon the same facts which were in her possession at all times."

The facts which existed at the time this release was signed were then known to the attending physician and were available to French had he interviewed the physician or examined the records of the hospital. The same facts, for medical reasons, were withheld from Buss. So far as both were concerned, the real facts as to the seriousness of the injury, when eventually they became known to them (after the release had been executed), were new facts. To say that knowledge that Buss "had a broken leg and nothing else" is the equivalent of knowledge that he had suffered a comminuted fracture of the upper third of the femur, with involvements which might require amputation and might even take his life—an injury which after hospitalization for nine-

898

ty-two days kept him confined to his bed for two months and on crutches for four or five months thereafter, and which left him with one leg two inches shorter than the other—is to play with words.

Plaintiff cites Powell v. Kansas-Mo. Rly. & T. Co., 121 Kan. 622, 249 P. 675, as authority for its contention that since both parties to the release knew of the existence of *an injury*, there was in fact no mutual mistake. The use of Shepard's Kansas Citations (a device apparently not employed by counsel for either party) has led to a reading of the opinion in the case of Crouch v. Missouri Pac. R. Co., 128 Kan. 26, 276 P. 81, certiorari denied, 1929, 280 U.S. 576, 50 S.Ct. 31, 74 L.Ed. 627 in which it is made clear that in the Powell case the alleged mistake was uncertainty as to the *result* of the injury, not as to its *seriousness*. And in Crouch, the Supreme Court of Kansas held that a mistake as to the *seriousness* of an injury is a mistake as to a presently existing fact.

In Koshka v. Missouri Pac. Railroad Co., 114 Kan. 126, 217 P. 293, it was held that a mutual mistake in underestimating the gravity of an injury was such a mistake as would result in avoidance of a release. Certainly, such a mistake existed here; and it appears to be well settled that the Kansas rule supports the defendants' position.

The release itself purports to cover all injuries, "known and unknown, developed and undeveloped, and unforeseen and unexpected developments and consequences of known injuries." Plaintiff would hold the defendants strictly to the strong and broad language of the instrument, stating that even though the court should determine that there was a mutual mistake of fact as to an unknown injury, the quoted provisions should prevail.

Similar language appears in the release under consideration by the Court of Appeals for the Tenth Circuit in the case of Montgomery Ward & Co. v. Callahan, 127 F.2d 32, 34. In that case, the court, speaking through Judge Huxman, said:

"The Company's position is that where, as here, parties contract with reference to all possible unkown and unanticipated injuries, mutual mistake as to the nature and extent of the injuries becomes immaterial and the release may not be set aside for that reason. The soundness of this position must be determined from the laws and decisions of Kansas. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L. R. 1487. In Smith v. Kansas City, 102 Kan. 518, 171 P. 9, 10, the Supreme Court of Kansas considered a release purporting to release and discharge all demands, claims, past, present and future, for a nominal consideration. Considering this release, the court said: 'It is not only fair, but reasonably clear, therefore, that both parties were acting under a misapprehension of a real condition—in other words, were mutually mistaken; and it must go without saying that in view of the real condition the amount paid was beyond all question inadequate.'

"In Rider v. Kansas City Terminal R. Co., 112 Kan. 765, 212 P. 678, 679, the Kansas Supreme Court considered a release which released the company from 'any and all liability for all claims for all injuries, including those that may hereafter develop, as well as those now apparent * * *.' It released the company from 'all causes of actions and claims for injuries and damages, which I have, or might have, arising out of such injuries * * *.' It provided that it was 'the intention of the parties that all matters of difference between them shall be and are hereby compromised and settled.' It further provided: 'In making this settlement I do not rely upon any statement of any doctor, physician or surgeon as to what my physical condition was, is or will be in the future, as a result of my injuries, and I do not make this settlement because of what anyone has told me about what condition is or will be. I have read this release. I know that I am settling for

everything and that no representations of any kind have been made to me.' Notwithstanding this strong language, the Supreme Court of Kansas held that the evidence was sufficient to submit to a jury the question of mutual mistake as to the nature and extent of injuries suffered."

The final point urged by plaintiff is that even if there was a mutual mistake it was not as to a material fact. This contention seems to be based upon the assumption that since Buss was over seventy years of age, he knew or should have known that any fracture of his leg would be serious and the duration of his disability long; that for this reason the fact that the break was more than an ordinary break is immaterial. In the light of the after-acquired knowledge of the gravity of the injury, I cannot believe that this point is seriously urged. I consider it without merit for the reasons stated in the discussion of the plaintiff's second point.

Plaintiff's motion for a new trial will be denied. Counsel will submit appropriate findings of fact and conclusions of law.